1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DONNA J. SMITH,

11           Plaintiff,                    No. 2:10-cv-02327 KJN

12       v.

13  MICHAEL J. ASTRUE,
    Commissioner of Social Security,

14

15           Defendant.                    ORDER
    _____/

16           Plaintiff, who is represented by counsel, seeks judicial review of a final decision

17  of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

18  Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act").[1]  In

19  her motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ")

20  in this case erred by finding that: (1) plaintiff failed to meet her burden to show that her alleged

21  impairments were "severe" within the meaning of the Act; and (2) plaintiff was not credible to

22  the extent that her testimony conflicted with the finding that plaintiff lacked a severe impairment

23  or combination of impairments.  (See generally Pl.'s Memo. of P. & A. In Supp. of Mot. for

24

25       [1]  This case was referred to the undersigned pursuant to Eastern District of California Local
    Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before
    a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301.
26  (Dkt. Nos. 8, 18.)

                                        1

Summ. J. at 1, Dkt. No. 12.)  Plaintiff asks the court to remand this matter to the agency so that

these alleged errors may be addressed.  The Commissioner filed an opposition to plaintiff's

motion and a cross-motion for summary judgment (Dkt. No. 13.)  For the reasons stated below,

the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-

motion for summary judgment.

I.      BACKGROUND[2]

        A.      Procedural History

                On July 17, 2007, plaintiff filed an application for Social Security Income ("SSI")

benefits that alleged a disability onset date of January 1, 2003.  (Admin. Tr. ("AT") 92.)  Plaintiff

subsequently amended her onset date to July 17, 2007, the date that plaintiff applied for benefits.

(AT 137.)

                The Social Security Administration denied plaintiff's application initially and

upon reconsideration.  (AT 54-55, 58-63, 65-70.)  Despite being represented by counsel, plaintiff

refused to attend a consultative medical examination arranged by the agency or provide sufficient

information to the agency in support of her application for SSI benefits.  (See AT 58, 65-66.)

                Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing

regarding plaintiff's claim on August 21, 2009.  (AT 20-53, 72.)  Plaintiff was represented by

counsel at the hearing and testified.  A vocational expert also testified at the hearing.

                In a written decision dated December 18, 2009, the ALJ denied plaintiff's

application for benefits on the basis of a finding at the second step of the five-step sequential

analysis that plaintiff did not have a "severe" impairment or combination of impairments within

////

////

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts herein.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

1  the meaning of the Act.[3]  (See AT 11-16.)  The ALJ's decision became the final decision of the

2  Commissioner when the Appeals Council denied plaintiff's request for review.  (See AT 1-3.)

3  Plaintiff subsequently filed this action.

4       B.   Summary of the ALJ's Findings

5       The ALJ conducted the required sequential evaluation and concluded that plaintiff

6  was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

7  engaged in substantial gainful employment since July 17, 2007, which was plaintiff's amended

8

9     [3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security

10  Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful

11  activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

12  than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976;

13  see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

14       Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to

15  step two.

16       Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is

17  appropriate.

18       Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

19  404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

20       Step four:  Is the claimant capable of performing his past

21  work?  If so, the claimant is not disabled.  If not, proceed to step five.

22       Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not

23  disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25     The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

26  evaluation process proceeds to step five. Id.

1  disability onset date and the date that plaintiff filed her application for benefits.  (AT 13.)

2          At step two, the ALJ found that plaintiff had "the following medically

3  determinable impairments: asthma, high blood pressure, Graves disease,[4] obesity and bilateral

4  knee minor osteoarthritis."  (AT 13.)  The ALJ also acknowledged in her decision that plaintiff

5  alleged disability due to irritable bowl syndrome, vertigo, and "MRSA (staph infection)."[5]  (See

6  AT 14.)  However, the ALJ concluded at step two of the analysis that: "The claimant does not

7  have an impairment or combination of impairments that has significantly limited (or is expected

8  to significantly limit) the ability to perform basic work-related activities for 12 consecutive

9  months; therefore, the claimant does not have a severe impairment or combination of

10  impairments (20 CFR 416.921 et seq.)."  (Id.)  In finding no "severe" impairment or combination

11  of impairments, the ALJ also discounted the credibility of plaintiff's statements, finding that

12  plaintiff's "statements concerning the intensity, persistence and limiting effects of [her]

13  symptoms are not credible to the extent they are inconsistent with finding that the [plaintiff] has

14  no severe impairment or combination of impairments."  (AT 14; see also id. at 14-16.)  As a

15  result of the finding of a lack of any severe impairment or combination of impairments, the ALJ

16  ultimately found that plaintiff was not disabled under the Act.  (See AT 16.)

17  II.     STANDARDS OF REVIEW

18          The court reviews the Commissioner's decision to determine whether it is (1) free

19  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

20  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

21

22          [4] Generally stated, Graves disease, also known as a "toxic diffuse goiter," is an autoimmune
disease that is a common cause of hyperthyroidism, which in turn is characterized by symptoms such
23  as elevated heart rate, fatigue, weight loss, and tremor.  See Mark H. Beers, M.D., et al., eds., The
Merck Manual of Diagnosis and Therapy 1195, 1197 (Merck Research Labs., 18th ed. 2006)
24  (hereinafter, "Merck Manual").

25          [5] "MRSA" denotes a "methicillin-resistant Staphylococcus aureas" infection, or "multi-drug-
resistant Staphylococcus aureas" infection.  See Stedman's Medical Dictionary 1232 (Lippincott
26  Williams & Wilkins, eds., 28th ed. 2006); see also Merck Manual 1443-44.

4

1    "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

2    2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it

3    is such relevant evidence as a reasonable mind might accept as adequate to support a

4    conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

5    (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d

6    at 690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

7    testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

8    Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

9    resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

10   substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

11   1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

12   denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see

13   also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

14   susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

15   (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

16   consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

17   of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

18   F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

19   2007).

20   III.   DISCUSSION

21          Plaintiff asserts two overarching, but somewhat overlapping, claims of error.

22   First, plaintiff claims that the ALJ failed to find, at step two of the five-step sequential analysis,

23   that plaintiff had any severe impairment or combination of impairments.  Second, plaintiff

24   alleges that the ALJ's adverse credibility finding, which greatly impacted the ALJ's finding at

25   step two, was made in error.

26   ////

A.      The ALJ's Determination At Step Two

Plaintiff offers three arguments in support of her contention that the ALJ erred at step two.  First, she contends that the ALJ was required to proceed past step two of the sequential analysis because plaintiff was purportedly a "carrier" of MRSA, which resulted in plaintiff's inability to return to her previous work as a home healthcare provider.  Second, plaintiff contends that although the ALJ addressed and relied on a September 2009 consultative medical report prepared by an examining physician, Dr. Fariba Vesali, the ALJ erroneously failed to address an October 2009 report prepared by Dr. Vesali that suggested that plaintiff had some functional limitations.  Third, plaintiff contends that the ALJ failed to properly assess plaintiff's obesity.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments.  See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months."  See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.921(a), 416.909.[6]  Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[7]  Although centered around the

---

[6]  Pertinent here, 20 C.F.R. § 416.921(a) provides that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  In relevant part, 20 C.F.R. § 416.920(c) provides: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  Similarly, 20 C.F.R. § 416.920(a)(4)(ii) provides, in relevant part: "If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."  In regards to the "duration requirement," 20 C.F.R. § 416.909 provides: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."

[7]  The applicable regulation provides examples of such "abilities and aptitudes":

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

1  term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless

2  claims."  See Smolen, 80 F.3d at 1290 (citing Bowen, 482 U.S. at 153-54).  The purpose is to

3  identify "at an early stage those claimants whose medical impairment is so slight that it is

4  unlikely they would be disabled even if their age, education, and experience were taken into

5  account."  Bowen, 482 U.S. at 153.  "An impairment or combination of impairments may be

6  found not severe *only* if the evidence establishes a slight abnormality that has no more than a

7  minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th

8  Cir. 2005) (citations and quotation marks omitted).

9        1.    Plaintiff's Purported Status As A "Carrier" of MRSA

10      In or around May 2009, plaintiff was treated for a MRSA infection apparently

11  incurred in connection with treatment for an abscess.  (See AT 25-26, 197, 199-205, 216.)

12  Despite treatment for the MRSA infection, plaintiff contends that she remains a "MRSA carrier."

13  (See AT 39.)  Although plaintiff testified at the hearing that her MRSA infection "resolved," she

14  also testified that "they say I'm a carrier."  (Id.)  Plaintiff further testified that "they" told her that,

15  as a precaution, she should wash her hands, and that "Dr. Davis gave [her] an antibiotic to put in

16  [her] nose."  (AT 40.)

17      Plaintiff now contends that because she is a "carrier" of the MRSA bacteria, she

18  can no longer perform her past work as a "caregiver"; plaintiff provided care to her quadriplegic

19  nephew until the year 1994.  (AT 25.)  In turn, plaintiff argues that because she cannot perform

20      (2) Capacities for seeing, hearing, and speaking;

21      (3) Understanding, carrying out, and remembering simple instructions;

22      (4) Use of judgment;

23      (5) Responding appropriately to supervision, co-workers and usual work situations; and

24      (6) Dealing with changes in a routine work setting.

26  20 C.F.R. § 416.921(b).

7

her past work—an issue ordinarily reserved for step four of the sequential analysis—the ALJ

should have proceed past step two of the analysis.  Plaintiff relies entirely on the following

statement in Social Security Ruling ("SSR")[8] 85-28, 1985 WL 56856 (1985), addressing

evaluations at step two:

> If the medical evidence establishes only a slight abnormality(ies) which
> has no more than a minimal effect on a claimant's ability to do basic work
> activities, but evidence shows that the person cannot perform his or her
> past relevant work because of the unique features of that work, a denial at
> the "not severe" step of the sequential evaluation process is inappropriate.
> The inability to perform past relevant work in such instances warrants
> further evaluation of the individual's ability to do other work considering
> age, education and work experience" [footnote omitted].

Plaintiff contends that her "carrier" status precludes her from performing "the unique features" of

her past work.

As the Commissioner argues, there is no medical evidence in the record

substantiating that plaintiff remained a "carrier" of MRSA, or that being such a purported carrier

has any implications for plaintiff's ability to work.  Rather than substantiate her status as a

MRSA carrier with any medical records such as a treating physician's report, plaintiff relies only

on her own statements that physicians apparently told her to wash her hands and use an antibiotic

for an unspecified period of time.  See SSR 85-28 ("At the second step of sequential evaluation, .

. . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on

ability to do basic work activities."); see also 20 C.F.R. § 416.908 (providing, in part, that "[a]

physical or mental impairment must be established by medical evidence consisting of signs,

symptoms, and laboratory findings, not only by your statement of symptoms.").  Indeed, there is

no medical evidence to suggest that status as a MRSA "carrier" is a medically determinable

impairment or a severe impairment.  Additionally, there is no evidence in the record

_____

[8]  "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
policy."  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry
the 'force of law,' . . . they are binding on ALJs nonetheless."  Bray, 554 F.3d  at 1224 (citation
omitted).

1  substantiating in any concrete detail what the "unique features" of plaintiff's prior work as a

2  caregiver were such that she cannot return to that work because of the previous MRSA infection.

3  The undersigned concludes that plaintiff's arguments focused on her MRSA infection are not

4  persuasive, and the ALJ was not required to proceed past step two in regards to that infection.

5                    2.    Dr. Vesali's Second Medical Report

6                    Next, plaintiff argues that the ALJ erred by not addressing one of the two medical

7  reports prepared by Dr. Vesali, a consultative examining physician who conducted a

8  comprehensive neurological evaluation of plaintiff on September 17, 2009.  (See AT 238.)

9  Following his examination of plaintiff, Dr. Vesail prepared a narrative report on or around

10  September 17, 2009, which concluded that plaintiff had no functional limitations.  (AT 242.)  Dr.

11  Vesali's report also states that plaintiff's condition would not impose any limitation for 12

12  continuous months.  (Id.)  However, Dr. Vesali subsequently prepared a function report, dated

13  October 9, 2009, which indicates, contrary to the earlier report, that plaintiff had some functional

14  limitations.  (AT 232-37.)  For example, Dr. Vesali noted that plaintiff could only

15  occasionally—as opposed to frequently or continuously—climb ladders or scaffolding or tolerate

16  exposure to dust, odors, fumes, and pulmonary irritants.  (AT 235-36.)  As with the prior report,

17  Dr. Vesali's second report concluded that plaintiff's limitations had not lasted and would not last

18  for 12 consecutive months.  (AT 237.)

19                    The ALJ relied on Dr. Vesali's September 2009 report in finding that plaintiff did

20  not suffer from a severe impairment.  (See AT 15 (relating that "Dr. Vesali indicated the claimant

21  did not have a condition that would impose any limitation for 12 continuous months, and that the

22  claimant had no functional limitations"); accord AT 16.)  However, plaintiff correctly points out

23  that the ALJ did not address Dr. Vesali's October 2009 report that partially contradicts the earlier

24  report.  Plaintiff argues that the ALJ's failure to discuss and specifically reject Dr. Vesali's

25  October 2009 report constitutes reversible error.

26                    The undersigned concludes that assuming the ALJ's failure to discuss Dr. Vesali's

October 2009 report was error, it was harmless error because that failure was inconsequential to the ultimate non-disability determination. See, e.g., Robbins, 466 F.3d at 885 (stating that an ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination") (citation omitted). The ALJ's error was harmless because in both reports, Dr. Vesali consistently concluded that plaintiff's limitations, if any, had not lasted and would not last 12 continuous or consecutive months. (AT 237, 242.) As noted above, an impairment or combination of impairments is not severe at step two of the analysis unless it lasted or is expected to last for a continuous period of at least 12 months. See 20 C.F.R. § 416.920(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment *that meets the duration requirement in § 416.909*, or a combination of impairments that is severe *and meets the duration requirement*, we will find that you are not disabled.") (emphasis added); 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it *must have lasted or must be expected to last for a continuous period of at least 12 months*. We call this the duration requirement.") (emphasis added); see also Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (affirming the ALJ's decision that the appellant had not suffered from a severe physical impairment because the record did not demonstrate that the appellant suffered from a physical impairment lasting the required 12-month period). Here, regardless of the contradictory findings related to plaintiff's functional limitations, Dr. Vesali consistently found that plaintiff's limitations, if any, would not meet the 12-month duration requirement. Accordingly, any error by the ALJ in not specifically addressing the contradictory findings in Dr. Vesali's October 2009 report was harmless because the record still supports the ALJ's finding that plaintiff's impairments were not severe.

### 3.   Plaintiff's Obesity

The ALJ found that one of plaintiff's medically determinable impairments was obesity. (AT 13.) However, the ALJ concluded that plaintiff's obesity was not a severe impairment. The ALJ stated that "[t]reating records did not contain evidence that [plaintiff's]

1    obesity was causing any problems with her musculoskeletal system, including her knees, and no

2    evidence she was referred for treatment for obesity." (AT 16.) In finding that plaintiff's obesity

3    was not a severe impairment, the ALJ stated that she "considered the effects of obesity as

4    required by Social Security Rulings but the record does not demonstrate any limitations or

5    restrictions as a result of [plaintiff's] obesity." (Id.) Plaintiff contends that the ALJ erred by not

6    considering plaintiff's obesity to be a "severe" impairment at step two, and failed to assess the

7    impact of plaintiff's obesity as required by Social Security Ruling 02-1p, 2000 WL 628049, 67

8    Fed. Reg. 57,859-02 (Sept. 12, 2002).

9              SSR 02-1p states that "[o]besity is a complex, chronic disease characterized by

10   excessive accumulation of body fat." It further states that obesity "commonly leads to, and often

11   complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body

12   systems," and "may also cause or contribute to mental impairments such as depression."

13   SSR 02-1p requires an ALJ to consider an individual's obesity at steps two through five of the

14   sequential evaluation, and requires that obesity be considered in combination with the

15   individual's other impairments. Ninth Circuit case law also requires an ALJ to determine the

16   effect of a claimant's obesity on his or her other impairments. See Celaya v. Halter, 332 F.3d

17   1177, 1182 (9th Cir. 2003). However, the plaintiff bears the burden of proving that her obesity

18   exacerbated her other impairments. See Burch, 400 F.3d at 682.

19             As noted above, the ALJ considered plaintiff's obesity and the applicable Social

20   Security Rulings at step two of the sequential analysis and found that obesity was not a severe

21   impairment. (See AT 16.) After considering the entire record, the ALJ concluded that plaintiff's

22   obesity was not itself a severe impairment and did not exacerbate any other impairments.

23   Plaintiff speculates that the existence of knee pain suggests that her obesity impacted her other

24   conditions. However, plaintiff's speculation is unsupported by any medical records, like a

25   treating physician's report, suggesting a connection between plaintiff's obesity and any other

26   condition. Moreover, the ALJ specifically found that plaintiff's obesity did not impact plaintiff's

1    knee problems.  (AT 16.)  The ALJ found that the record failed to show that plaintiff's obesity

2    restricted plaintiff's ability to perform work-related activities, or that plaintiff sought any

3    treatment for her obesity.  Accordingly, plaintiff did not meet her burden at step two, and the

4    undersigned concludes that the ALJ did not err is assessing plaintiff's obesity and finding that

5    obesity was not a severe impairment.  See Burton v. Astrue, 310 Fed. Appx. 960, 961 n.1 (9th

6    Cir. 2009) ("Burton also argues that the ALJ erred in failing to consider adequately Burton's

7    obesity.  Burton, however, does not specify how his obesity limits his functional capacity, or how

8    it exacerbates his currently existing condition.  Therefore, this argument does not provide a

9    separate basis to challenge the ALJ's decision."); Hoffman v. Astrue, 266 Fed. Appx. 623, 625

10   (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was

11   proper because Hoffman failed to show how his obesity in combination with another impairment

12   increased the severity of his limitations.").

13           B.       The ALJ's Credibility Determination

14           As noted above, the ALJ found that plaintiff's "statements concerning the

15   intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they

16   are inconsistent with finding that the [plaintiff] has no severe impairment or combination of

17   impairments."  (AT 14.)  Plaintiff argues that the ALJ erred in discounting plaintiff's credibility.

18           In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the

19   ALJ's task with respect to assessing a claimant's credibility:

20                   To determine whether a claimant's testimony regarding subjective
             pain or symptoms is credible, an ALJ must engage in a two-step analysis.
21           First, the ALJ must determine whether the claimant has presented
             objective medical evidence of an underlying impairment which could
22           reasonably be expected to produce the pain or other symptoms alleged.
             The claimant, however, need not show that her impairment could
23           reasonably be expected to cause the severity of the symptom she has
             alleged; she need only show that it could reasonably have caused some
24           degree of the symptom.  Thus, the ALJ may not reject subjective symptom
             testimony . . . simply because there is no showing that the impairment can
25           reasonably produce the degree of symptom alleged.

26                   Second, if the claimant meets this first test, and there is no

                                                    12

1         evidence of malingering, the ALJ can reject the claimant's testimony about
        the severity of her symptoms only by offering specific, clear and
2         convincing reasons for doing so. . . .

3 Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  In weighing a

4 claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for

5 truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

6 conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

7 parties concerning the nature, severity, and effect of the symptoms of which [claimant]

8 complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original)

9 (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d

10 at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility

11 evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in

12 claimant's testimony.").  If the ALJ's credibility finding is supported by substantial evidence in

13 the record, the court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

14         Here, the ALJ's credibility determination turned on the second aspect of the

15 above-stated test.  (See AT 14.)  Because the ALJ pointed to no evidence of malingering, the ALJ

16 was required to provide clear and convincing reasons for discounting plaintiff's credibility.

17         The ALJ provided several reasons for discounting plaintiff's credibility, and the

18 undersigned concludes that, on the whole, those reasons are clear and convincing and supported

19 by substantial evidence.  First, the ALJ pointed to inconsistencies in plaintiff's testimony or

20 representations to the agency concerning her alleged limitations.  (AT 16.)  The ALJ stated that

21 when plaintiff filed her application for benefits, no physical difficulties were observed, and

22 plaintiff's application stated that plaintiff did not need help with personal care, hygiene, or

23 upkeep of her home.  (AT 16, 93, 102-03.)  The ALJ permissibly concluded that these

24 observations and representations were inconsistent with plaintiff's testimony at the hearing

25 regarding her dramatically limited daily activities.  (AT 16, 34-35.)  Inconsistencies in testimony

26 is a permissible basis for finding a claimant not credible.  See Thomas, 278 F.3d at 958-59.

1    Second, the ALJ reasoned that plaintiff's complaints were "further eroded as there

2    [was] no evidence from her treating sources that she was considered disabled or that she had any

3    functional limitations."  (AT 16.)  The ALJ further noted in this regard that the record contained

4    no evidence of "any surgery on her knees, no diagnostic studies related to her headaches, physical

5    therapy, treatment at a pain clinic, or hospitalizations."  (Id.)  The ALJ properly considered the

6    record of routine or no treatment relative to plaintiff's claims of disabling symptoms in

7    discounting plaintiff's credibility.  See Burch, 400 F.3d at 681 ("The ALJ is permitted to

8    consider lack of treatment in his credibility determination."); see also Tommasetti, 533 F.3d

9    at 1039 (finding that the ALJ permissibly "inferred that Tommasetti's pain was not as

10   all-disabling as he reported in light of the fact that he did not seek an aggressive treatment

11   program and did not seek an alternative or more-tailored treatment program after he stopped

12   taking an effective medication due to mild side effects").  The record supports, and plaintiff does

13   not materially refute, the ALJ's conclusion that plaintiff's treatments were conservative or non-

14   existent relative to plaintiff's claims of all-disabling impairments.

15   Third, the ALJ found plaintiff less credible, in part, "because the State agency

16   determined there was insufficient evidence of a medical impairment."  (AT 15 (citing AT 171-

17   77, 190-95).)  It is not entirely clear what the ALJ intended to convey by this statement.  These

18   reports essentially found insufficient evidence of any medical impairment because plaintiff failed

19   to attend a consultative medical examination or provide medical records.  Although plaintiff is

20   correct that these State agency determinations were not made on a full record—and the

21   Commissioner concedes that additional medical evidence was subsequently added to the

22   record—that record was incomplete only because plaintiff failed to cooperate in the evaluative

23   process.  In terms of an ultimate determination that plaintiff was not disabled, sole reliance on

24   these State agency records would be dubious.  However, in terms of a credibility determination, it

25   seems reasonable for the ALJ to note plaintiff's failure to cooperate in the evaluative process as a

26   basis for a finding of diminished credibility given that an ALJ may consider ordinary techniques

14

1  of credibility evaluation such as a plaintiff's reputation for truthfulness.  In any event, the

2  undersigned finds that the ALJ's reliance on the State agency records as a basis for the adverse

3  credibility finding not entirely persuasive—but not fatal to the finding—given the ambiguity with

4  which the ALJ stated the finding.

5            Fourth, in finding plaintiff less credible, the ALJ relied on Dr. Vesali's September

6  2009 finding that plaintiff had no functional limitations and did not have any conditions that

7  would impose any limitation for 12 continuous months.  (AT 15-16.)  Plaintiff again attacks the

8  ALJ's finding on the grounds that Dr. Vesali's September 2009 report was partially contradicted

9  by Dr. Vesali's October 2009 report, which indicated some functional limitations.  Nevertheless,

10 the ALJ's finding is supported by both of Dr. Vesali's reports in that Dr. Vesali consistently

11 found that plaintiff would not suffer from any limitations for 12 continuous months, and, as

12 discussed above, the duration requirement is a fundamental feature of a finding of a severe

13 impairment or a disability.  Although the undersigned acknowledges the contradictions between

14 Dr. Vesali's two reports, any error attributable thereto is harmless in light of Dr. Vesali's

15 determination as to duration and the other reasons provided by the ALJ in support of the adverse

16 credibility finding.

17           On the whole, the undersigned cannot conclude that the ALJ's adverse credibility

18 finding was made in error.  Because the credibility determination is supported by substantial

19 evidence in the record, the undersigned will not second guess the ALJ.

20 IV.   CONCLUSION

21           For the foregoing reasons, IT IS HEREBY ORDERED that:

22           1.     Plaintiff's motion for summary judgment (Dkt. No. 12) is denied.

23           2.     Defendant's cross-motion for summary judgment (Dkt. No. 13) is granted.

24 ////

25 ////

26 ////

1          3.      The Clerk of Court is directed to enter judgment in favor of defendant.

2          IT IS SO ORDERED.

3 DATED:  March 27, 2012

4

5                                        _____

6                                        KENDALL J. NEWMAN
                                         UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26